Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.  CR08-0246RSM |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| AMANI R. MOSS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.    Introduction**

Defendant Amani Moss entered a plea of guilty to one count of Aiding and Abetting Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2, in connection with a mortgage fraud scheme that had been spearheaded by Ms. Moss' former husband, Christopher Brooks.  Mr. Brooks was sentenced by this Court on February 27, 2009, to a term of imprisonment of 84 months.  For the reasons stated below, the government recommends that Ms. Moss receive a sentence of incarceration of 8 months, followed by two years of supervised release.

**II.    Offense Conduct**

In 2005, as the housing market in the Puget Sound area was reaching its peak, Christopher Brooks worked as a loan officer for a mortgage company.  Amani Moss worked under Mr. Brooks' direction, assisting him in the loan process by processing

1   paperwork and submitting loan applications.  Using his knowledge of the home loan

2   process, Mr. Brooks devised a fraudulent loan scheme to purchase homes and "flip" them

3   for profit.  Mr. Brooks first recruited individuals with good credit histories who agreed, in

4   return for cash payments, to obtain mortgage loans in their names.  The straw buyers were

5   told that while the homes and loans would be in their names, Mr. Brooks would make all

6   mortgage payments and Mr. Brooks would keep any profits from the re-sale of the homes.

7        Once straw buyers were secured, Mr. Brooks identified homes to purchase.

8   Working with a particular local realtor, Mr. Brooks targeted homes that had been on the

9   market for some time.  These sellers were more eager to sell under the unusual terms

10  proposed by Mr. Brooks and his realtor.  Mr. Brooks' realtor approached the sellers and

11  offered to purchase the home at list price, but on the condition that the sales price be

12  inflated by tens of thousands of dollars in the sales contract.  The realtor explained that

13  when the sale closed and the loan funded, the seller will receive only the original list

14  price, and the additional funds will be directed to a company called Peachtree

15  Development.  The realtor further explained that by this means the purchaser could obtain

16  funds to pay for renovations to the house.  Peachtree Development, however, was

17  controlled by Mr. Brooks and Ms. Moss.  Some sellers and their selling agents who were

18  approached with this scheme rightly refused to enter into the arrangement, suspecting that

19  something was wrong.  Unfortunately, many sellers were willing to do exactly what

20  Mr. Brooks' realtor proposed.  The inflated amount on the various properties purchased

21  by Mr. Brooks ranged from $30,000 to $700,000.

22       When a sale was agreed upon, Mr. Brooks applied for a loan in the name of a

23  straw buyer for 100% of the inflated purchase price.  Mr. Brooks made many false

24  statements and representations in the loan applications and associated paperwork, all

25  designed to meet lenders' approval criteria.  Ms. Moss knowingly assisted the preparation

26  and processing of such false loan applications.  Specifically, on October 31, 2005,

27  Ms. Moss assisted Mr. Brooks in preparing and submitting a loan application to Novelle

28  Financial Services in the name of M.T. for the purchase of a residence at 210 211th Place,

Government's Sentencing Memorandum/ - 2
U.S. v. Amani Moss, CR08-0246RSM

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   SE, Sammamish, Washington.  Among other things, the loan application stated that M.T.

2   intended to use the property as his/her primary residence; that M.T. was employed as an

3   Account Executive at D.L. Willrich/Critical Sun Recordings; and that M.T. earned a

4   monthly income of $11,300.  These statements were false and Amani Moss knew they

5   were false.  Ms. Moss also made herself available to provide employment verification for

6   M.T. in the event the financial institution called to verify M.T.'s employment.

7        As a result of the false and fraudulent loan application, Novelle Financial Services

8   approved the loan.  On November 4, 2005, in furtherance of the scheme and artifice to

9   defraud, Christopher Brooks caused the lender to wire transfer a portion of the loan

10  proceeds from a Bank of America account in New York, New York, to an account at U.S.

11  Bank in Seattle, Washington for the benefit of Christopher Brooks.  Mr. Brooks defaulted

12  on the loan and the home had to be sold for an approximate loss of $50,000.

13       The evidence in this investigation revealed that Ms. Moss played a supporting and

14  administerial role to Christopher Brooks.  None of the straw buyers were recruited by her,

15  she did not pick out the properties, and she did not arrange the loans or purchases.

16  Instead, she filled out paperwork, collected signatures, and passed on the paperwork to

17  the financial institutions at Mr. Brooks' direction.  Ms. Moss benefitted financially from

18  Christopher Brooks' scheme only by virtue of living with him, i.e. she was able to drive

19  his cars and live in their fancy home which had also been purchased through fraud.  There

20  is no evidence that she had exclusive control over any of the accounts that received the

21  proceeds of the fraud.  As a result of Amani Moss' minor position in the offense, the

22  government agreed to limit for sentencing purposes the loss incurred through her

23  participation in the scheme to between $30,000 and $70,000.  See Plea Agreement at ¶ 8.

24  **III.    Sentencing Guidelines Calculations**

25       The government's sentencing guidelines calculations differs from that proposed by

26  the Probation Office in its Pre-sentence Report.  The Probation Office's calculation does

27  not take into account the explicit agreement contained in the Plea Agreement to limit

28  Ms. Moss' loss amount and instead, makes her responsible for the entirety of the loss

Government's Sentencing Memorandum/ - 3
U.S. v. Amani Moss, CR08-0246RSM

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

admitted by her co-defendant Christopher Brooks.  However, the government, as part of the plea bargain and in recognition of Ms. Moss' lesser role in the scheme, agreed to limit the loss amount in return for Ms. Moss not seeking any additional deviation from the sentence for role.  Consistent with the Plea Agreement, therefore, the United States recommends that the Court find that the appropriate final offense level is Level 11.  The government agrees that Ms. Moss' criminal history category is Category I.

The government recommends the following calculations:

| | |
|---|---|
| Base Offense Level, pursuant to USSG § 2B1.1(a)(1) | 7 |
| Specific Offense Characteristic pursuant to USSG § 2B1.1(b)(1)(D), because loss amount was greater than $30,000 but less than $70,000 | + 6 |
| Acceptance of Responsibility, pursuant to § 3E1.1(b) | - 2 |
| Final Adjusted Offense Level | 11 |

## IV.   Sentencing Recommendation

If the Court adopts the government's recommended Sentencing Guidelines calculations with a Final Adjusted Offense Level of 11, with a Criminal History Category I, the applicable Sentencing Guidelines range is 8-14 months in Zone C.  Pursuant to the sentencing factors set forth in 18 U.S.C. § 3553, the government recommends a sentence of 8 months incarceration, followed by two years of supervision.

A.   *Nature of the offense and history and characteristic of defendant*.

Section 3553(a)(1) requires the court to take into account at sentencing the nature and circumstances surrounding the specific offense at issue, and the history and characteristics of the defendant.  It is anticipated that counsel for Ms. Moss will present evidence at sentencing seeking to demonstrate that Ms. Moss merely acted at the direction of her husband who psychologically and on some occasions physically abused her.  On the basis of this, they will likely seek a further substantial departure from the United

Government's Sentencing Memorandum/ - 4
U.S. v. Amani Moss, CR08-0246RSM

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  States's recommendation.

2      The United States agrees from the evidence that Mr. Brooks clearly controlled this

3  scheme and Ms. Moss provided a supporting role.  The government also has no evidence

4  to the contrary to dispute Ms. Moss' recounting of her relationship with Mr. Brooks.

5  However, Mr. Brooks has already received substantial mitigation for her role and

6  circumstance in the plea bargain she struck with the government.  The United States

7  submits that reducing the sentencing loss amount from more than $2 million to merely

8  $50,000, more than compensates for Ms. Moss' minor role and the difficult circumstances

9  of her relationship with Christopher Brooks.  Given the scope of this scheme, which

10  ultimately included more than 50 property transactions, and the damage that the scheme

11  has caused to the fabric of this district's housing market and well-being of financial

12  institutions, a term of imprisonment of just 8 months is a generous discount from what

13  Ms. Moss would have otherwise faced.

14      *B.*    *Need for deterrence and respect for the law*.

15      Section 3553(a)(2) provides that a sentence should reflect the seriousness of the

16  offense and provide general as well as specific deterrence.  As explained above, the sheer

17  scale of the defendants' conduct in this case requires a significant term of imprisonment.

18  This was not an isolated instance of fraud but a systematic scheme that harmed a number

19  of financial institutions.  Amani Moss should be sentenced to a term of incarceration in

20  order to send the appropriate message that complicity in such activity will not be

21  tolerated.  Therefore, any split sentence in this matter would be inappropriate.

22      *C.*    *Kinds of sentences available and the recommended sentencing range*.

23      The government's recommended sentence falls at the low end of the calculated

24  Sentencing Guidelines Range and, therefore, within the range that the Commission has

25  concluded is appropriate for an individual like Amani Moss.  The government does not

26  believe that any circumstances warrant deviating from the recommended sentence, mainly

27  because the Plea Agreement already takes into account Ms. Moss' lesser role in this

28  offense.

1        D.      *The need to avoid sentencing disparities*.

2        Christopher Brooks received a term of incarceration of 84 months.  Even taking

3  into account Ms. Moss' lesser role in this matter, a sentence that does not include a term

4  of imprisonment will be disproportionate.  The United States respectfully submits that a

5  sentence of 8 months incarceration strikes the right balance.

6  **V.**    **Conclusion**

7        For the foregoing reasons, the United States recommends a sentence of 8 months

8  incarceration followed by two years of supervision.

9        DATED this 22nd day of May, 2009.

10

11                                Respectfully submitted,

12                                JEFFREY C. SULLIVAN
United States Attorney

13                                s/ Katheryn Kim Frierson
KATHERYN KIM FRIERSON

14                                Assistant United States Attorney
WSBA # 37794

15                                United States Attorney's Office
700 Stewart Street, Suite 5220

16                                Seattle, WA 98101
Telephone: (206) 553-7970

17                                Facsimile:  (206) 553-2502
E-mail: katheryn.k.frierson@usdoj.gov

18

19

20

21

22

23

24

25

26

27

28

1

CERTIFICATE OF SERVICE

2          I hereby certify that on May 22, 2009, I electronically filed the foregoing with the

3    Clerk of Court using the CM/ECF system which will send notification of such filing  to

4    the attorney(s) of record for the defendant(s).

5

6                                          *s/Anna Chang*
                                           ANNA CHANG
7                                          Paralegal
                                           United States Attorney's Office
8                                          700 Stewart Street, Suite 5220
                                           Seattle, Washington 98101-1271
9                                          Telephone:   (206) 553-2274
                                           Facsimile:   (206) 553-2502
10                                         E-mail:  Anna.Chang@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
CERTIFICATE OF SERVICE